# United States District Court

NORTHERN DISTRICT OF GEORGIA

**ORIGINAL**

UNITED STATES OF AMERICA
v.

DENNIS DUREN

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-174

FILED IN CHAMBERS
FEB 11 2013
U.S. MAGISTRATE JUDGE
N.D. GEORGIA

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning in or about October 2011 and continuing through November 2011, in DeKalb County and elsewhere in the Northern District of Georgia, the defendant did,

conspire to obstruct and affect commerce by unlawfully obtaining United States currency from another person, with the consent of that person, said consent having been induced under color of official right; attempt to possess with intent to distribute cocaine, a Schedule II controlled substance, and possess a firearm in furtherance of a drug trafficking crime

in violation of Title 18, United States Code, Section 1951, Title 21, United States Code, Section 841, and Title 18, United States Code, Section 924(c).

I further state that I am a agent of the Federal Bureau of Investigation (FBI) and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.      (X) Yes ( ) No

Signature of Complainant
James P. Hosty, IV

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

February 11, 2013                                   at    Atlanta, Georgia
Date                                                       City and State

Alan J. Baverman
United States Magistrate Judge
Name and Title of Judicial Officer                         Signature of Judicial Officer
AUSA Brent A. Gray

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT
## FOR DENNIS DUREN

I, James P. Hosty, IV, being duly sworn, depose and state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 23 years. I am currently assigned to the Atlanta, Georgia office and work on the Civil Rights/Human Trafficking/Public Corruption Squad, which has the responsibility for investigating police corruption, among other federal crimes. I am a law enforcement officer of the United States, FBI, U.S. Department of Justice, within the meaning of Title 18, United States Code, Section 3052, which includes being an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses pursuant to Title 18, United States Code, Section 3052.

2. During my law enforcement career, I have participated in dozens of investigations relating to drug trafficking and police corruption. I have received specialized training in the methods and techniques used by drug trafficking organizations. I have debriefed many witnesses and confidential informants about drug trafficking generally, as well as the specific practice of employing corrupt law enforcement officers as part of a drug trafficking scheme. Through this training and experience, I have become familiar with many of the patterns of activity exhibited by drug traffickers. Except where I state that I am relying on my training and experience as described here, the information in this affidavit is based on information and belief, the source of that information and basis for that belief being my own investigation and information obtained by other law enforcement agents.

3. I submit this affidavit in support for a warrant for the arrest of DENNIS DUREN for conspiracy to commit extortion under color of official right in violation of Title 18, United States

Code, Section 1951, attempted possession with the intent to distribute cocaine in violation of Title 21, United States Code, Section 841, and possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c).

## BACKGROUND OF INVESTIGATION

4. Based on my training and experience, I know that sophisticated drug trafficking groups distribute narcotics using a variety of covert methods that are designed to avoid detection by law enforcement and others. If detected, they are aware law enforcement will seize the drugs and money and arrest them. They also know that other drug dealers or criminal groups will rob them, if given a chance, stealing both the drugs and money. In the worst case, drug deals can turn violent.

5. Given these risks, drug traffickers occasionally attempt to enlist law enforcement officers to provide protection both for them and the drug transactions they conduct. In employing corrupt police officers at a drug deal, the traffickers hope to prevent rival groups from intervening and ultimately stealing their drugs and the drug proceeds. Additionally, they hope to keep legitimate law enforcement at bay by positioning a visible law enforcement presence at or near the drug transactions. In these cases, drug traffickers are willing to pay thousands of dollars to corrupt law enforcement officers who will provide protection for these transactions.

6. In August, 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was investigating a street gang in the Metro Atlanta area. During the course of that investigation, a confidential informant (CI-1) provided information about the gang's criminal activities. CI-1 told federal agents that police officers were involved in protecting the gang's activities, including their drug trafficking crimes. In general, these police officers, in uniform, driving police vehicles or otherwise displaying indicia of their positions, protected the drug dealers from being detected or arrested by other law enforcement officers and from being robbed by other drug dealers. The

information provided to federal agents by CI-1 regarding the use of law enforcement officers to protect drug deals is consistent with my experience and training in the investigation of similar cases.

7. CI-1, who had been working with federal agents since August, 2011, communicated to gang members and their associates that CI-1 would need police protection for his/her upcoming drug transactions. Shortly thereafter, Shannon Bass, Jerry B. Mannery, Jr., and Elizabeth Coss, none of whom are law enforcement officers, began identifying to CI-1 law enforcement officers interested in protecting his/her drug deals. Once those individuals were identified, information regarding the location and circumstances of the proposed drug deals was relayed to CI-1 and/or Shannon Bass, Jerry B. Mannery, Jr., Elizabeth Coss for him/her to pass along to law enforcement officers who expressed an interest in protecting the drug transactions.

## FACTS ESTABLISHING PROBABLE CAUSE

8. On four separate occasions beginning in or around October, 2011 and continuing until in or around November, 2011, DENNIS DUREN, a police officer with DeKalb County Police Department (DCPD), provided protection for what he believed to be drug transactions involving multiple kilograms of cocaine.

9. DENNIS DUREN has worked as a police officer with DCPD since December, 2006.

10. <u>Meeting on October 3, 2011.</u> On October 3, 2011, DENNIS DUREN, Shannon Bass, who is not a law enforcement officer, and CI-1 met at an IHOP restaurant, 5170 Memorial Drive, Stone Mountain, Georgia. During the meeting, CI-1 told DENNIS DUREN and Bass that he needed help protecting cocaine and marijuana drug transactions. DENNIS DUREN and Bass agreed to assist CI-1 in protecting future drug transactions including one that was planned for October 4, 2011.

11. <u>Drug Transaction on October 4, 2011.</u> On October 4, 2011, FBI and Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents surveilled a meeting between DENNIS

DUREN, a confidential informant (CI-1), two undercover agents (UC-2 and UC-3) and Bass in the parking lot of a Publix Store, 5158 Memorial Drive, Stone Mountain, Georgia. When CI-1 and UC-2 arrived in the parking lot, agents observed DENNIS DUREN and Bass standing in front of the Publix Store entrance. DENNIS DUREN was wearing a DCPD police uniform and a firearm in a holster on his belt. A short time later, UC-3 arrived in the Publix parking lot. Once UC-3 parked his/her vehicle, CI-1 walked to CI-1's vehicle and retrieved a backpack from the trunk. CI-1 then walked toward UC-3's vehicle with the backpack and got into UC-3's vehicle. Once inside the vehicle, CI-1 provided UC-3 with a backpack containing three kilograms of counterfeit cocaine. During this transaction, FBI and ATF agents observed DENNIS DUREN patrolling the parking lot and very loosely following CI-1. Once CI-1 entered UC-3's vehicle, FBI and ATF agents observed DENNIS DUREN walking around UC-3's vehicle. FBI and ATF agents observed Bass standing with UC-2 near the entrance to the Publix Store watching UC-3's vehicle. After the drug transaction was completed, CI-1 and UC-2 walked back to CI-1's vehicle and got inside. CI-1 then drove through the shopping center parking lot, and parked near the front entrance of ATL Beauty and Barber. Bass then entered CI-1's vehicle, and asked if it was "twenty-two" ($2,200). CI-1 then handed Bass $2,200. Bass told CI-1 that he was going to keep $1,500 of the $2,200 for himself, and give the remaining $700 to DENNIS DUREN for his part in protecting the drug transaction. This transaction was audio and video recorded.

12. <u>Meeting on October 5, 2011.</u> On October 5, 2011, FBI and ATF agents surveilled a meeting between DENNIS DUREN, Bass, CI-1, and UC-2 at an IHOP restaurant, 5170 Memorial Drive, Stone Mountain, Georgia. During the meeting DENNIS DUREN, Bass, CI-1, and UC-2 discussed the operational aspects of the prior drug transaction that occurred on October 4, 2011, and discussed future drug transactions that DENNIS DUREN and Bass would protect for CI-1 and UC-2.

Before the meeting began, Bass made everyone present take their cell phones out, remove the batteries, and place them on the table. Bass explained that this had to be done because cell phones could be used as listening devices by law enforcement. During the meeting, DENNIS DUREN agreed with CI-1 that the prior day's drug transaction was not conducted quickly enough to avoid detection. In addition, they all agreed that future drug transactions would occur at one of five different pre-determined locations, which the participants would only refer to by their designated number assigned to each location. This meeting was audio recorded.

13. <u>Conversation on October 11, 2011.</u> On October 11, 2011, CI-1 spoke with Bass who informed CI-1 that DENNIS DUREN agreed to use a DCPD patrol vehicle to protect drug transactions but that the cost would be $3,000 instead of the originally agreed upon price of $2,200.

14. <u>Drug Transaction on October 18, 2011.</u> On October 18, 2011, FBI and ATF agents surveilled a meeting between DENNIS DUREN, CI-1, UC-2, UC-4, and Bass in the parking lot of a Publix Store, 5158 Memorial Drive, Stone Mountain, Georgia. When CI-1 and UC-2 arrived in the Publix parking lot, FBI and ATF agents observed DENNIS DUREN sitting in his personal pickup truck in the parking lot. A short time later, UC-4 arrived and parked his/her vehicle in the parking lot near CI-1's vehicle. CI-1 then got out of his/her vehicle and got into UC-4's vehicle. Once inside the vehicle, CI-1 provided UC-4 with a backpack containing three kilograms of counterfeit cocaine. As soon as CI-1 entered UC-4's vehicle, FBI and ATF agents observed DENNIS DUREN get out of his vehicle and walk up and down the parking stalls near UC-4's vehicle where the drug transaction was taking place. FBI and ATF agents observed DENNIS DUREN wearing his DCPD uniform and a firearm in a holster on his belt. At the same time, UC-2 and Bass stood in front of the store and appeared to be watching the drug transaction in UC-4's vehicle. After the drug transaction was completed, DENNIS DUREN, CI-1 and UC-2 met Bass

inside the store. During this meeting, UC-2 gave Bass the payment of $2,200 which was to be shared with DENNIS DUREN. This transaction was audio and video recorded.

15.     Drug Transaction on October 24, 2011. On October 24, 2011, FBI and ATF agents surveilled a meeting between DENNIS DUREN, CI-1, UC-2, UC-4, and Bass in the parking lot of a Publix Store, 2162 Henderson Mill Road, Atlanta, Georgia. When CI-1 and UC-2 arrived in the Publix parking lot, FBI and ATF agents observed DENNIS DUREN walking out of the store toward his personal vehicle in the parking lot. A short time later, UC-4 arrived and parked his/her vehicle in the parking lot near CI-1's vehicle. CI-1 then got out of his/her vehicle and got into UC-4's vehicle. Once inside the vehicle, CI-1 provided UC-4 with a backpack containing three kilograms of counterfeit cocaine. As soon as CI-1 entered UC-4's vehicle, FBI and ATF agents observed DENNIS DUREN get into his personal vehicle and drive to a parking spot directly across from UC-4's vehicle. DENNIS DUREN then got out of his vehicle and walked up and down the parking stalls near UC-4's vehicle where the drug transaction was taking place. FBI and ATF agents observed DENNIS DUREN wearing his DCPD uniform and a firearm in a holster on his belt. At the same time, UC-2 and Bass stood in the parking lot and appeared to be watching the drug transaction in UC-4's vehicle. After the drug transaction, CI-1, UC-2 and Bass meet at a Red Lobster restaurant, 3937 Lavista Road, Tucker, Georgia. Inside the restaurant, UC-2 gave Bass the payment of $2,200 which was to be shared with DENNIS DUREN. This transaction was audio and video recorded.

16.     Drug Transaction on November 1, 2011. On November 1, 2011, FBI and ATF agents surveilled a meeting between DENNIS DUREN, CI-1, CI-2 and Bass in the parking lot of a Kroger store, 965 N. Hairston Road, Stone Mountain, Georgia. When CI-1 arrived in the store parking lot, FBI and ATF agents observed DENNIS DUREN, in uniform, driving a DCPD patrol

vehicle in the parking lot. The agents also observed Bass parked in his personal vehicle in the parking lot. A short time later, CI-2 arrived and parked his/her vehicle in the parking lot near CI-1's vehicle. CI-1 then got out of his/her vehicle and got into CI-2's vehicle. Once inside the vehicle, CI-1 provided CI-2 with a backpack containing three kilograms of counterfeit cocaine. As soon as CI-1 entered CI-2's vehicle, FBI and ATF agents observed DENNIS DUREN begin to drive his DCPD patrol vehicle in circles around the parking lot. After the drug transaction, CI-1 and Bass met at ATL Beauty and Barber Salon, 5254 Memorial Drive, Stone Mountain, Georgia. In the parking lot, CI-1 gave Bass the payment of $2,200 which was to be shared with DENNIS DUREN. CI-1 explained that he would later pay an additional $800 for the use of the DCPD vehicle. This transaction was audio and video recorded.

17.   November 3, 2011 Meeting. On November 3, 2011, FBI and ATF agents surveilled a meeting between DENNIS DUREN, CI-1, UC-2 and Bass inside a Red Lobster restaurant, 3937 Lavista Road, Tucker, Georgia. During this meeting, CI-1 and Bass left the table and UC-2 and DENNIS DUREN were alone. UC-2 then paid DENNIS DUREN the $800 that was owed from the November 1, 2011 drug transaction. UC-2 and DENNIS DUREN also discussed the amount of cocaine traded during previous transactions. After CI-1 and Bass rejoined DENNIS DUREN and UC-2, CI-1 told Bass and DENNIS DUREN that there was three kilograms of cocaine in his vehicle trunk. DENNIS DUREN and Bass offered to follow CI-1 to a nightclub and provide protection for the cocaine during the trip. This meeting was audio and video recorded.

## CONCLUSION

18.     Based on the foregoing, I submit there is probable cause to believe that DENNIS DUREN conspired to commit extortion under color of official right in violation of Title 18, United States Code, Section 1951, attempted to possess with the intent to distribute cocaine in violation of Title 21, United States Code, Section 841, and possessed a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c).